We'll hear argument now in the case of Pecoraro v. Menard. Mr. Nichelle. Thank you, Your Honor. May it please the court, counsel, my name is Joseph Nickley and I represent Angelo and Antonio Pecoraro in this matter. Your Honor, this appeal is before you today on appeal of the District Court's entry of summary judgment in favor of Menard and against Angelo and Antonio. This matter arises out of an incident that occurred at the Hanover Park... Mr. Nickley, I have a subject matter jurisdiction. Yes, Your Honor. Your brief says there is diversity jurisdiction and so does Menard's, but I wonder why it is that the amount in controversy exceeds $75,000. The Menard's supplemental jurisdictional statement says it exceeds $75,000 because each of the two plaintiffs is claiming $50,000 and that adds up to $100,000, but it's a federal jurisdiction that the amount in controversy of two different litigants cannot be added together. So why is there jurisdiction in this case? Well, first off, Your Honor, this was removed from... I know it was removed. Okay. Your brief asserts that the amount in controversy is satisfied. I'm asking you why. It is evidence and the medical discovery is completed that the medical bills will far exceed the $75,000 limit. Has this ever been alleged? Well, it's just been... No, Your Honor, it has not. Well, that's the problem. Jurisdiction usually depends on the allegations at the time the case is removed and not on anything that might happen later. If the medical bills came in low, that wouldn't defeat jurisdiction. It depends on the allegations at the time of removal. And I gather the allegation at the time of removal was that each plaintiff was seeking $50,000. That's what Menard says. That's correct. Your brief doesn't discuss this at all. And since the amounts claimed by different plaintiffs cannot be aggregated, it looks like we have a $50,000 controversy. Now, is there any response to that concern? No, the only thing I can say is what I said before, Your Honor, as to the medical records or the medical bills. It was alleged as $50,000. You're correct about that. In this case, the removal was sought from Menard's. It was originally filed by plaintiffs and Mr. and Mrs. Pecoraro in the Cook County Circuit Court. And so besides what I've already said, Your Honor, you're correct. It was alleged as $50,000 in the complaint. All right. Please proceed. The district court denied or granted summary judgment because it believed that there was not a proximate cause in this case. Proximate cause is typically in the province of the jury. And in this case, it was an error for the court to take that from a trier of the fact. It's up to the trier of the fact to determine if there's a proximate cause. And in this instance, the district court and counsel in their briefs, in Menard's brief, cited several cases to indicate why, as a matter of law, the court could take that purview from the jury. But those cases are distinguishable from here. And those cases are extreme circumstances that do not have the facts that are in this case. In all those cases, besides the person who was injured, no other witnesses to what happened. And in those cases, the individuals who were injured either had no memory of what caused the injury or why that person was injured. And those are not the circumstances in this case. For example, in the Burke versus Manlow case cited by the district court, the plaintiff tripped while staying at a friend's house at a threshold of the door. But he had no memory as to actually why he tripped. And there was no witnesses to why he tripped. So here, your client speaks of the warped piece of trim. Your client didn't observe the warped piece of trim, correct? Well, he saw the warped piece of trim after the wood fell on it. That's correct. Was that ever located and photographed? No, your honor, it was not. There's no... Unfortunately, there's no photographs of the actual warped piece of trim. There's one photograph of the wood that had fallen. That was taken immediately afterwards. But as far as I'm aware, unfortunately, there is no photograph of the actual warped or crooked piece of wood. So in terms of the identification of the wood, you've got your client and then the Menard's manager coming up afterwards saying something like that should not have been there. Correct, your honor. Correct. It's based on the testimony of Mr. Pecoraro and the admission by the store manager that there was that piece of wood and that should not have been there, should have been called out during a stocking or when the store was being faced. And so that's what's the distinguishing characteristic between this case and the numerous cases or the other cases cited by not only district court but by Menard's, is that we have a person here, Mr. Pecoraro, who actually saw the mechanism that caused the wood to fall. And it's not like the Keating case where the plaintiff in that case fell from a three story porch while doing repair work. In that case, he didn't remember actually falling. He remembers he was swinging a hammer and the next thing he knows, he was in the hospital. In that case, the plaintiff even admitted that it was possible that he was the one who removed the railing or could have separated. He had no idea what happened. That's not present in this case. So the argument is either we're in the world of speculation and you're trying to distinguish those cases relied upon by the district court and the plaintiff that it's full speculation. Here, you're relying on testimony of the plaintiff and the statement of the Menard's employee to get it out of speculation. Is that your argument? That's correct, Your Honor. In this case, we cited the Hush case in the brief and we think this case is far more akin to that, where the exact mechanism may... Exactly how it happened may be... There may be questions about that. But in the Hush case, for example, the plaintiff did not remember falling, but she had wire wrapped around her legs or wire by her legs. And so the circumstantial evidence in that case was found to be sufficient to allow the jury to determine the issue of proximate cause as it should have been allowed to do in this case. And again, all the other cases that were cited, they do not have that distinguishing fact because the person who was injured either is deceased and could not testify about what happened or had no memory of the events that happened. And so in this case, Dr. Rauro, we believe that it's distinguishable from those cases because it's not that extreme circumstance that is present in these other cases  and these are issues that should have been allowed to be decided by the jury. Further... You're in your rebuttal time, counsel. I'm sorry, Your Honor. You're in your rebuttal time very seriously. Thank you, Your Honor. If there's no other questions, I'll reserve my time for rebuttal. Thank you. Certainly, counsel. Counsel, why don't Your Honor... Mr. Andrews. I will answer your question, Your Honor, right up front. I am Tony Andrews and I'm proud to represent Menard Incorporated in this case and I will answer the jurisdictional question I presume you'd like an answer. Oh, yeah. Yes. I can tell you in good faith, we make a deliberate investigation of this issue up front. I do not have my initial pleading section of file right here. I cannot tell you precisely what we did here, but I can answer you in three ways. One, we officially... First, we get an affidavit or stipulation from the plaintiff. Will you stipulate, Mr. Plaintiff? And I only look at Mr. Plaintiff. I am not combining the two for this analysis. Your supplemental jurisdictional statement does combine the two. I concur it does, Your Honor. I can also tell you that Judge Shaw already had analyzed this issue and I can tell you that the nature of the injuries also demonstrate the case is worth more than 50. And though Joe couldn't tell you about that, this is... The question is whether the amount in controversy of 75,000 is satisfied. Yes. And we typically seek a stipulation... We looked at your notice of removal. Yes, Your Honor. There's nothing there about the amount in controversy exceeding 75,000. Your notice of removal does just what your supplemental statement in this court does. It combines two $50,000 claims and says, well, we got 100,000 and that's enough. As a matter of law, it's not enough. The Supreme Court established that sometime early in the 19th century. Yes, Judge. Would you like to hear about the nature of the injuries that the court already evaluated? The question is whether the plaintiff's complaint... It's not whether you are about to give narrative testimony, that doesn't matter. It has to be alleged in the pleadings that the amount in controversy exceeds $75,000. And I can't see where that happens. Is there some place where that happens? Yes, Your Honor. In the plaintiff's complaint, his damages are alleged to include neck injuries. In this case, he's actually contemplating a neck fusion, significant surgery that he is trying to relate to this event. If he, in fact, does that, there will be a significant impairment to it. He alleges a neck injury. Look, counsel, we've been through this. Things that happen after the date of removal don't matter. We have to figure out what the amount in controversy was on the date of removal. What the plaintiff may be contemplating is not only not in the record, so far as I can see, it's not something that's true as of the date of removal. Your notice of removal says, well, this is all just one big claim, so add the two together. So I look to see whether Illinois treats the husband and wife's claims as one big claim. The answer appears to be no, it does not. So the allegation in your notice of removal on which removal was founded is legally false. Where do we go from here? And your testimony about what you think might happen is not pertinent. I agree, Judge. My testimony is not. But the plaintiff's complaint is he sustained a neck injury. Now, he has to establish medical bills and causation, but his claim, as pled, is I sustained a neck and shoulder injury. Of significant worth, worthy of neurological surgery consultation. Now, we will go back to the argument in this case. The parties will have 14 days to file supplemental statements on the existence of subject matter jurisdiction. And both sides should note that under 28 U.S.C. 1653, allegations of jurisdiction may be amended. Perhaps these allegations are amendable to be legally sufficient, and perhaps not. But they will have to be allegations, if amended, that are true as of the date of the removal, and not as of later developing events. Okay? Very well. Suspend all other arguments on all the other issues, Your Honor. Pardon? Suspend all arguments on all other issues. There will be no other argument. We shall comply. No, no. Look, counsel, you're not going to argue this case again. If you ever want, if you believe that you can amend the documents, and that this court has jurisdiction, you need to argue this case now, unless you just want to waive your oral argument. I'm happy to stand the briefs, and I'm also happy to use five minutes, if I may, to respond to the substantive issues that the parties have briefed. But we will give you the jurisdictional statement as well. I want to also address Judge Brennan's questions about the photos. That is, there were photos taken by both sides, by the plaintiff, the shopper guest, and the store personnel. No photo shows any evidence of this warped piece that only thus comes from the testimony of the plaintiff. After he claims 10 pieces of lumber fell on him, he looks back and sees what he declares to be a very crooked, in one sense, and a warped piece is another description. So that's the photographic evidence. What we're left with, and on the issue of the manager's testimony, Your Honor, the manager's testimony is that that should not be there, because warped pieces of wood don't belong there. They belong in the dented and dinged pile. And so we have it clear, a warped piece of wood should not be there, or that warped piece of wood should not be there. It's a very good distinction. Good question. Some warped pieces of wood can just stay there and just be sold at a discount. Others are cut down, because it's warped to the top, and then we can sell the latter, bottom two-thirds. It depends. The only statement, now, by the way, the manager denies that he made such a statement, but as the record does say, the plaintiff said, the manager said it, so it's there. So I don't know. We don't have it, and we don't have any photographs of it. But the most important thing is, a warped piece of wood in Iraq is not unsafe. It is not a dangerous condition, and it is not a defective condition. It may not be aesthetically pleasing, and it may not be worth the $12 it was in its right form, but it is not dangerous. There's been no evidence that it poses any danger. There's been no evidence demonstrated it's ever happened before, and so there's no evidence of it being a danger. It's just not pleasing. What we come down to is, every single case in every jurisdiction that the parties have cited for the last three decades holds the Illinois law requires that liability be based on reasonable certainty that the defendant's acts caused the injury. It cannot be based on conjecture. Whether you want to look at the Illinois appellate court cases, or the Illinois Supreme Court cases, or the district court cases in Northern or Central District, or the Seventh Circuit, all hold true that it has to be, liability has to be based on reasonable certainty that the defendant created the harm. Win, lose, or draw, whether the defendant won, lost, or drew on any one of the cases cited, the proposition is still, there has to be reasonable certainty. Now, this court said it a couple of times. One, back in 05, in the Roger Whitmore case, that the plaintiff must connect the dots between proctor and post, in the post hoc ergo proctor hoc. And more recently, this court described the standard as such. It's true, there's circumstantial evidence. And that's what we're talking about, circumstantial evidence. He doesn't know, and we didn't see, and there's no evidence. So everything's, we're talking about circumstantial evidence. And lots of cases are on, based on circumstantial evidence. But this court, in the Bau case in 2017, said it's true that circumstantial evidence need not exclude all other possibilities, but the conclusion must be more than speculative. And rather, it must be the only reasonable conclusion. And that is clearly not met here. Judge Shaw didn't find it to be met here. And the circumstantial evidence does not, in this case, leave to only one reasonable conclusion. There's lots of conclusions that could be reached. And since it's not the only probable conclusion, and it's not the most likely conclusion, and it's certainly not the only reasonable conclusion that this warped piece of wood caused the tumbling, the circumstantial evidence does not support the notion here. And Judge Shaw's finding, that the plaintiff is merely guessing, must stand. And if I may just briefly touch on the unreasonable risk issue. All the cases, all the decades, all the jurisdiction degree, the plaintiff must prove that it posed an unreasonable risk. This warped piece of wood doesn't pose an unreasonable risk. And it doesn't, whether you look at it from Illinois or federal law, this wood is not posing a hazard, and the law requires the defendant establish that the defendant knew of the hazard. This warped piece of wood is either innocuous or a first time event. But it certainly isn't a hazard, and the defendant is not held to guess what might happen someday. So for those reasons, I ask that you affirm Judge Shaw. Anything further? It's pretty clear, Your Honor. Thank you. The case law, as we cited in the brief, makes it clear that although it is proper for a plaintiff to rely on circumstantial evidence, and it doesn't have to, and circumstantial evidence does not have to preclude any other reasons, doesn't have to show the only reason. And so that is an unreasonably high bar to say that just because circumstantial evidence is used, that every reason has to be foreclosed upon. That is not what the law states. The testimony was clear from the managers and from the employee, that the employees from Menards are trained to stock these bins and to ensure that there is no crooked or warped wood in the bins. And so going to the notice of what Menards had, they are the only ones who are handling this wood because they are the ones who are stocking it, and they are the ones who are to ensure that the wood is not warped or crooked. And so if there's crooked wood in the bin, it was placed there or was not removed by Menards' employees. I thank you for your consideration. If there's no further questions, we will rest on the briefs. We ask that this court reverse the district court's granting of summary judgment in favor of Menards. Thank you. Thank you very much. I remind counsel for both sides that jurisdictional statements are due within 14 days, and the case will be taken under advisement when those have been received.